# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| EDDIE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-CV-106-JAR |
| | ) | |
| DANNY WARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment [ECF No. 39]. The motion has been fully briefed and is ready for disposition. For the following reasons the motion will be granted.

## I. Background

Plaintiff Eddie Clark ("Clark") has filed this action under 42 U.S.C. § 1983, asserting a claim of excessive force against Defendant Joshua Johnson ("Johnson") and failure to intervene against Defendant Danny J. Ware ("Ware"), both Deputy Sheriffs with the New Madrid County Sheriff's Department. The circumstances underlying Clark's action involve Defendants' response to a domestic disturbance call in November 2009.

## II. Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving

party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (citing Anderson, 477 U.S. at 251-52).

## III. Discussion

**Count I - Excessive Force**

In Count I of his amended complaint, Clark alleges Johnson's repeated administration of drive-stun shocks from a taser after he was handcuffed was an excessive use of force. (First Amended Complaint, ECF No. 36, ¶¶38-39). Defendants contend the force used on Clark was necessary and appropriate because he admittedly was resisting arrest and failing to comply with orders to stop kicking and get in the patrol car. (Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 40, p. 10-11). Defendants also claim Clark's claim is barred by the doctrine of qualified immunity.

Claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness standard." Graham v. Conner, 490 U.S. 386, 395 (1989). The Court must examine the totality of the circumstances and consider "whatever specific factors may be appropriate in a particular case." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994).

In determining whether the force used was objectively reasonable, relevant circumstances include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Howard v. Kansas City Police Dept., 570 F.3d 984, 989 (8th Cir. 2009) (citing Graham, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). The Court may also consider the extent of the suspect's injuries and standard police procedures. Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir. 2007). "Ultimately, the reasonableness of the force applied must be judged from the perspective of a reasonable officer on the scene 'rather than with the 20/20 vision of hindsight.' " Id. See also Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

Reasonableness under the Fourth Amendment is generally a question of fact for the jury. See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); Kopec v. Tate, 361 F.3d 772, 777 (3rd Cir. 2004); White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986). However, Defendants can prevail on summary judgment if the Court concludes, after resolving all factual disputes in favor of Plaintiff, that the officers' use of force was objectively reasonable under the circumstances. Scott, 39 F.3d at 915.

It is undisputed that Defendants came to Clark's house in response to a domestic disturbance call made by Clark's wife, Judy. Clark and the couple's two sons, Bullet and Travis, had been involved in a fight at the house earlier in the day which prompted Mrs. Clark to call the police. The altercation ended with Bullet leaving the house before Defendants arrived. When

3

Defendants arrived, Clark and his wife were standing on the front porch of their house. Clark states he was "drunk, belligerent and covered in blood." (Memorandum in Opposition to Defendants' Motion for Summary Judgment, ECF No. 41, p. 6). Clark admits telling the officers to "get the fuck off [his] property," and interrupting and talking over his wife while Defendants attempted to question her. Clark states he then took "a step or two in the direction of the officers with his fists clenched." (Id.) At this point, Defendants attempted to handcuff Clark. Clark admits resisting Defendants' efforts at handcuffing him by grabbing onto the porch railing and refusing to put his hands behind his back.[1] After warning Clark that he would be tasered if he failed to release the handrail, Ware tasered Clark in the back one time, handcuffed him, and placed him in the rocking chair on the front porch.[2] After instructing Johnson to keep an eye on Clark, Ware took Mrs. Clark into the house to interview her about the call she made to police.

Johnson testified on deposition that when Ware went in the house, Clark began cursing at him and kicking "wildly" in the air for a couple of minutes. Johnson testified he decided to move Clark to his patrol car because he kept kicking and trying to get up out of the chair. Johnson helped Clark out of the rocking chair and escorted him off the porch. When they reached the patrol car, Clark refused to get in. Clark admits kicking at Johnson and telling him to "make me" and "go fuck yourself." Johnson warned Clark if he did not sit in the car he would be tasered. Clark refused to comply and Johnson tasered him in the abdomen. Clark still would not sit in the

---

[1] On deposition, Judy Clark disputes that her husband was drunk and resisting Defendants' attempts to handcuff him. The Court finds her testimony does not raise a genuine issue of material fact since it is inconsistent with the facts as agreed to by the parties.

[2] Clark makes no claim of excessive force for Deputy Ware's administration of the taser on the porch. (Memorandum in Opposition to Defendants' Motion for Summary Judgment, ECF No. 41, p. 6).

car, told Johnson he was going to kick him "in the nuts," and began to raise his leg. Johnson tasered Clark a second time in the abdomen. Clark then sat in the car with his legs dangling out of the car, and continued to curse at Johnson. Johnson stated that while Clark was in this position, he said if he was not let out of the car, he was going to kick Johnson "in the nuts." Johnson tasered Clark a third time in the abdomen. Johnson testified that about this time, Ware opened the door on the other side of the patrol car and pulled Clark all the way into the car while Johnson pushed Clark's feet into the car. Defendants transported Clark to jail, where he was charged with attempting to cause physical contact with Johnson. The charges were later dismissed.

Under the "totality of the circumstances," the Court finds Johnson's use of the taser on Clark was objectively reasonable. Defendants were responding to a domestic disturbance call. The volatility and unpredictability of situations involving domestic violence makes them particularly dangerous for law enforcement officers. United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005). When responding to domestic disturbance calls, officers are obligated to assure themselves that there is no threat to themselves or anyone else. When Defendants arrived, they encountered Clark outside the home, drunk and covered in blood. He was hostile and uncooperative, telling Defendants to "get the fuck off my property." Clark kept shouting over his wife and preventing her from explaining to Defendants what was going on. Considering the danger that domestic disputes pose to law enforcement officers, the Court finds a reasonable officer arriving at the Clarks' home could reasonably be concerned about his safety. While the use of force by officers "simply because a suspect is argumentative, contentious, or vituperative" is not to be condoned, Bauer v. Norris, 713 F.2d 408, 412 (8th Cir. 1983), Clark's behavior went

well beyond yelling and cursing. He took some threatening steps towards the Defendants with his fists clenched, and then resisted their efforts to handcuff him by grabbing onto the porch railing and refusing to put his hands behind his back..

Even after being handcuffed, Clark continued to actively resist Defendants by trying to get up out of the chair and kicking at them. The Court finds Johnson's decision to remove Clark from the porch and take him to the patrol car was a reasonable precaution, for Johnson's safety as well as the safety of Clark himself. Although Clark was handcuffed when Johnson tasered him, there is no dispute that he was refusing to comply with Johnson's repeated commands to get into the patrol car. Whether Johnson tasered Clark three times or four times is immaterial for purposes of summary judgment in that Johnson's actions constituted one continuous sequence of events. Attempting to physically force Clark into the car would have likely escalated the situation even further, resulting in serious injury to either Clark or Johnson. Where a person is physically resistant and non-compliant with a law enforcement officer, a number of courts have found the use of a taser objectively reasonable. Holtgreven v. O'Fallon Police Dept., 2009 WL 2032164, at *9 (E.D. Mo. July 8, 2009)(citing Buckley v. Haddock, 292 Fed.Appx. 791, 796 (11th Cir. 2008); Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004); Hinton v. City of Elwood, Kan., 997 F.2d 774, 777 (10th Cir. 1993)). See also Luepker v. Taylor, 2010 WL 2696701, at *10 (E.D. Mo. July 6, 2010).

Because the Court finds that no genuine issue of material fact exists regarding the use of excessive force by Defendant Deputy Johnson, Defendants' motion for summary judgment on Clark's excessive force claim will be granted.

**Count II - Failure to Intervene**

In Count II of his amended complaint, Clark alleges Ware failed "to intervene, stop, redirect or even question the actions of Defendant Johnson." (First Amended Complaint, ECF No. 36, ¶ 46-7). Defendants contend Ware did not have knowledge of, or time to react to, any actions taken by Johnson. Therefore, he cannot be found liable for failing to intervene. Further, Defendants claim Clark's claim is barred by the doctrine of qualified immunity.

A defendant can be liable for failure to intervene under two different theories. Holtgreven, 2009 WL 2032164, at *9 (citing Torres–Rivera v. O'Neill–Cancel, 406 F.3d 43, 51–52 (1st Cir.2005)). Under the first theory, an officer can be liable if he was "present at [Plaintiff's] arrest with an opportunity to prevent the excessive use of force." Id. (citing Fogarty v. Gallegos, 523 F.3d 1147, 1163 (10th Cir.2008)). Alternatively, an officer can be liable where he was "instrumental in assisting the actual attacker or aggressor to place the victim in a vulnerable position." Id. (citing Torres–Rivera, 406 F.3d at 52). However, officers at the scene of an arrest can only be held liable for failing to intervene if there was an underlying violation of the arrestee's constitutional rights. Putman v. Gerloff, 639 F.2d 415, 423–24 (8th Cir.1981). As previously discussed, the Court has determined that Deputy Johnson's use of the taser to subdue Clark was objectively reasonable under the circumstances confronting him. Because there is no underlying violation of Clark's constitutional rights, Clark's failure to intervene claim against Deputy Ware fails.

**Qualified immunity**

Both Johnson and Ware raise the issue of qualified immunity. The doctrine of qualified immunity protects law enforcement officers from having to defend lawsuits if their conduct did not violate clearly established statutory or constitutional law of which a reasonable person would

have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). The case law related to taser use is still developing, McKenney v. Harrison, 635 F.3d 354, 360-61 (8th Cir. 2011) (Murphy, J. concurring), and may not be sufficiently clear to put an officer on notice that he must limit the use of his taser in certain circumstances, even though the subject continues to struggle and resist.

In Cockrell v. City of Cincinnati, 2012 WL 573972 (6th Cir. Feb. 23, 2012), the Sixth Circuit observed that cases addressing qualified immunity for taser use fall into two groups. The first group involves plaintiffs tasered while actively resisting arrest by physically struggling with, threatening, or disobeying officers. Id. at *4. In these cases, courts have concluded either (1) that no constitutional violation occurred, or (2) that the right not to be tasered while resisting arrest was not clearly established at the time of the incident. Id. (citing Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011)[3] (holding, in consolidated cases, that 2004 and 2006 taser deployments constituted excessive force, but did not violate clearly established law, where one plaintiff, a pregnant woman pulled over for speeding, refused to sign citation, became agitated, screamed at officers, clung to steering wheel, and was tasered three times, and the other plaintiff, also a woman, was shot with a taser in dart mode as she stood between officers and her large, drunken, aggressive husband who was under arrest); McKenney v. Harrison, 635 F.3d 354 (8th Cir.2011) (holding that 2007 taser deployment against a suspect subject to three misdemeanor arrest warrants who made sudden move toward window while being questioned by police and was told not to "try anything stupid," did not constitute excessive force, even though he fell out of a window to his death after being tasered); Bryan v. MacPherson, 630 F.3d 805(9th Cir. 2010) (holding that 2005 taser deployment

---

[3] *cert. den.*, --S.Ct.--, 2012 WL 568166 (U.S. May 29, 2012).

against a motorist yelling angrily and acting erratically after traffic stop for failing to wear a seatbelt violated Fourth Amendment, but not clearly established law); Baird v. Ehlers, 2011 WL 5838431 (W.D.Wash. Nov.21, 2011) (holding that using taser three times on a man who, in a "drunken stupor," was physically removed from a city bus, and engaged in verbal and physical confrontation with an officer, may have been excessive use of force, but that the law regarding taser use was not clearly established as of November 2009); Carter v. City of Carlsbad, 2011 WL 2601027 (S.D. Cal. June 30, 2011) (holding that the use of a taser against a large, belligerent, drunken ex-marine who "took an offensive fighting stance" may have been excessive, but did not violate clearly established law on October 31, 2009); Azevedo v. City of Fresno, 2011 WL 284637 (E.D.Cal. Jan. 25, 2011) (holding that the use of a taser against a suspect detained during a burglary investigation, who fled after being asked about weapons and warned to stop, may have violated Fourth Amendment, but did not violate clearly established law, as of November 2007); Sanders v. City of Dothan, 671 F.Supp.2d 1263 (M.D.Ala.2009) (holding that officer who tasered detained, but uncooperative, suspect using drive-stun mode did not violate clearly established law, as of August 2005); and Beaver v. City of Federal Way, 507 F.Supp.2d 1137 (W.D.Wash.2007) (holding that, out of five August 2004 taser deployments against a suspect who fled the scene of a residential burglary and refused to obey a command to stop, first three were not excessive uses of force, since officer had to make split-second decisions on how to subdue a disobedient, fleeing felon, while the last two constituted excessive force because suspect was no longer an immediate threat; qualified immunity was still appropriate, however, because the law was not clearly established)). See also Wade v. Fresno Police Dept., 2012 WL 253252, at *16 (E.D. Cal. Jan. 25, 2012) (and cases cited therein).

In the second group of cases, a law enforcement officer tasers a plaintiff who has done nothing to resist arrest or is already detained. Cockrell,2010 WL 573972, at *5. In these cases, courts have held that a § 1983 excessive force claim is available since "the right to be free from physical force when one is not resisting the police is a clearly established right." Id. (and cases cited therein). The instant case does not fit in this group because Clark was admittedly physically struggling with, threatening, and disobeying Johnson and Ware.

Assuming *arguendo* that Johnson's repeated use of the taser on Clark was excessive, the Court cannot determine as a matter of law that it violated clearly established law as of November 2009. Therefore, the Court finds Johnson and Ware are entitled to qualified immunity on Clark's claims of excessive force and failure to intervene.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Renewed Motion for Summary Judgment [ECF No. 39 ] is **GRANTED**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 4th day of June, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE